## MAXWELL v. BRAYSHAW.

(Court of Appeals of District of Columbia. Submitted March 7, 1919. Decided
May 22, 1919.)

### No. 3223.

1. **APPEAL AND ERROR** ⬤➔854(2)—HARMLESS ERROR—ERRONEOUS REASON FOR
   JUDGMENT.
   A correct judgment will not be set aside because an erroneous reason
   was given for it.

2. **PLEADING** ⬤➔348—DISPOSITION ON MOTION—AFFIDAVIT OF DEFENSE.
   An action to recover the possession of premises was properly decided
   on plaintiff's motion, where the affidavit of defense was nothing more
   than a demurrer to plaintiff's affidavit of merit, filed under rule 19 of the
   Supreme Court.

3. **PLEADING** ⬤➔234—AFFIDAVIT OF DEFENSE—AMENDMENT—NECESSITY OF
   LEAVE OF COURT.
   In action to recover possession of real property, where plaintiff filed an
   amended affidavit of merit under rule 19 of the Supreme Court, the defend-
   ant may file an additional affidavit of defense without leave of court.

4. **LANDLORD AND TENANT** ⬤➔285(5)—RELATIONSHIP—LAW OR FACT.
   In action for recovery of possession of premises held by tenant by
   sufferance, question whether the relationship of landlord and tenant
   exists is a question of law, and not of fact.

5. **WAR** ⬤➔4—LEASED PREMISES—RECOVERING POSSESSION—SAULSBURY
   RESOLUTION.
   Under Joint Resolution of May 31, 1918, prohibiting proceedings to
   recover leased premises during the war, unless a bona fide purchaser de-
   sires to occupy the premises, etc., a summary landlord and tenant proceed-
   ing to gain possession may be employed, without surrendering plaintiff's
   rights as a bona fide purchaser.

6. **LANDLORD AND TENANT** ⬤➔94(5)—RECOVERING POSSESSION—ACCEPTANCE OF
   RENT AFTER NOTICE TO QUIT.
   Acceptance of a month's rent during the running of a notice to quit does
   not create a new tenancy, or waive plaintiff's right to demand possession
   under the notice.

7. **STATUTES** ⬤➔217—CONSTRUCTION—CONGRESSIONAL DEBATES AS EVIDENCE.
   Congressional debates in harmony with a fair construction of an act
   are highly persuasive in determining the legislative intent.

8. **WAR** ⬤➔4—LEASED PREMISES—RECOVERING POSSESSION—SAULSBURY RESO-
   LUTION.
   Under Joint Resolution of May 31, 1918, prohibiting proceedings to
   recover possession of leased premises, except "where the property has
   been sold to a bona fide purchaser for his own occupancy," etc., the ex-
   ception is not restricted to sales made prior to the resolution's passage,
   but includes sales made after date of resolution and before instituting
   suit.

9. **WAR** ⬤➔4—LEASED PREMISES—RECOVERING POSSESSION—SAULSBURY RESO-
   LUTION.
   Under Joint Resolution of May 31, 1918, prohibiting proceedings to re-
   cover leased premises during the war, except where property has been
   sold to a bona fide purchaser, etc., a purchaser collecting rents for unex-
   pired portion of an outstanding lease, and doing nothing to establish a
   new relation of landlord and tenant, remains within exception of the stat-
   ute, and may oust lessee on the lease's termination.

⬤➔For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

10. War ⊆—4 — Leased Premises — Recovering Possession — Saulsbury Resolution.

    Under Joint Resolution of May 31, 1918, prohibiting proceedings to recover leased premises, except by certain bona fide purchasers, and providing that every purchaser shall take "subject to the rights of all tenants in possession," etc., the quoted · words do not restrict the purchaser's previously given right of recovery, but merely mean that a purchaser not within exception takes subject to tenant's rights under the resolution, and that even bona fide purchasers take subject to unexpired leases.

11. Constitutional Law ⊆—46(3)—Validity of Act—Duty to Decide.

    It is unnecessary to pass upon the constitutionality of a resolution, where the case presented is not within its provisions.

Appeal from the Supreme Court of the District of Columbia.

Action by Margaret R. Brayshaw against Ida J. Maxwell. Judgment for plaintiff, and defendant appeals. Affirmed.

Julius I. Peyser and Mark Stearman, both of Washington, D. C., for appellant.

J. Barrett Carter and John C. Brooke, both of Washington, D. C., for appellee.

John E. Laskey, U. S. Atty., and Henry W. Sohon, Sp. Asst. U. S. Atty., both of Washington, D. C., amicus curiæ.

VAN ORSDEL, Associate Justice. This appeal is from a judgment in the Supreme Court of the District of Columbia in favor of appellee, Brayshaw, plaintiff below, for possession of certain premises located in the District of Columbia.

The proceedings were originally instituted in the municipal court. It was alleged that appellant, defendant below, had rented the premises and held the same as a tenant by sufferance, which tenancy had been duly terminated by service of the legal notice to quit. It was also alleged that plaintiff was a bona fide purchaser of the premises, and, as such, desired to occupy the same as a home for herself and family. From a judgment in favor of appellee, appeal was taken to the Supreme Court of the District of Columbia.

Affidavits were filed by the respective parties under rule 19· of the Supreme Court. Thereafter plaintiff, by leave of court, filed an amended affidavit of merit, to which no amended affidavit of defense was filed. On motion of plaintiff, judgment for possession was entered, from which this appeal was prosecuted.

The sole ground relied upon by plaintiff is that—

"she purchased said premises in good faith for a residence for herself and family, and that she in good faith desires to obtain possession in order to occupy the same as a residence for herself and family."

Purchase was made on April 20, 1918, and a 30-day notice to quit was served 2 days later. During the pendency of the running of the notice, plaintiff accepted from defendant one month's rent. Defendant, in her affidavit of defense, admits her tenancy, the payment of the rent, and the service of the notice to quit, but alleges:

---

⊆—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"That such notice cannot be the basis of a 7-day summons and complaint issued by the municipal court, as there is no relation alleged in the affidavit to show that the said 30-day notice was to be the basis of a suit to be filed by said plaintiff in the above-entitled cause; that the said plaintiff is a landlord within the meaning of the Saulsbury Resolution, having accepted rent from the said defendant, and he is not employed in the service of the government, or officially connected therewith, but that the plaintiff is the wife of a produce dealer; that the Saulsbury Resolution does not contemplate a notice dated April 26th (the 30-day notice), but, on the contrary, was passed to prevent unnecessary evictions of war workers, that the defendant is housing a number of war workers; that the Saulsbury Resolution aims to continue all existing tenancies within the District during the period of the war, with such exceptions as are stated therein."

[1] It is contended that the court erred in rendering judgment on plaintiff's motion, based upon the alleged "failure of the defendant to file an affidavit of defense." Assuming that the original affidavit of defense might have been considered as an answer to plaintiff's amended affidavit, if the judgment was right, it will not be set aside because an erroneous reason may have been assigned in the motion.

"It is well settled that in an appellate court it is no sufficient ground of complaint that a trial judge may have given wrong reasons for a correct judgment." Howes v. District of Columbia, 2 App. D. C. 188.

[2, 3] The court committed no error in disposing of the case on plaintiff's motion, since the affidavit of defense amounted to nothing more than a demurrer to plaintiff's affidavit. If defendant desired to file an additional affidavit of defense in answer to plaintiff's amended affidavit, she could have done so without leave of court. This objection, however, was not presented to the court below, and it cannot be considered here.

[4] It is insisted that the following questions of fact were involved, which should have been submitted to a jury:

(1) "Was the acceptance of one month's rent enough to constitute appellee a landlord?"
(2) "Was she in fact a bona fide purchaser?"
(3) "Was she in the service of the government?"
(4) "Was the purchase made for her own use and occupancy," and "were the premises necessarily required by appellee?"

Whether or not the relation of landlord and tenant existed is a question of law, and not of fact. As to the questions of fact, plaintiff alleged that she was a bona fide purchaser, and this was not denied. No contention was made that plaintiff was in the employ of the government. Plaintiff alleges that the premises were purchased for her own use and occupancy, and were needed for that purpose; and neither fact is denied. Hence no issue of fact was presented.

[5, 6] It is urged that plaintiff could not maintain the summary landlord and tenant proceeding instituted in the municipal court, for the reason that, whether plaintiff was or was not a landlord, the court, in either event, was without jurisdiction. This contention is based upon defendant's interpretation of the Saulsbury Resolution, which will be considered later in this opinion. On this record, plaintiff purchased the premises in question in good faith, for her own use and occupancy. She found the property in the possession of a tenant.

She could maintain the summary landlord and tenant proceeding provided by statute to gain possession, without surrendering any rights belonging to her as a bona fide purchaser. The acceptance of one month's rent pending the running of the notice to quit did not create a new tenancy; neither did it operate as a waiver of plaintiff's right to demand possession under the notice. Byrne v. Morrison, 25 App. D. C. 72.

[7-9] This brings us to the chief question in the case, and the one upon which some of the objections just considered depend—the interpretation of the act of Congress of May 31, 1918 (40 Stat. 593, c. 90), known as the "Saulsbury Resolution." The act, eliminating the preamble, which has no material bearing upon its interpretation, reads as follows:

"That until a treaty of peace shall have been definitely concluded between the United States and the Imperial German government, unless in the meantime otherwise provided by Congress, no judicial order, decree, or judgment for the recovery of possession of any real estate in the District of Columbia, now or hereafter held or acquired by oral or written agreement of lease for one month or any longer period, or for the ejectment or dispossession of a tenant therefrom, shall be made, and all leases thereof shall continue so long as the tenant continues to pay rent at the agreed rate and performs the other conditions of the tenancy which are not inconsistent herewith, unless the tenant has committed waste, or has been guilty on the premises of conduct which constitutes a nuisance or a breach of the peace, or other misdemeanor or crime, or that the premises are necessarily required by a landlord or bona fide purchaser for occupation either by himself or his wife, children, or dependents while he is in the employ of or officially connected with any branch of the government, or where the property has been sold to a bona fide purchaser for his own occupancy; and where such order, decree, or judgment has been made, but not executed before the passage of this resolution, the court by which the order, decree, or judgment was made shall, if it is of the opinion that the order, decree, or judgment would not have been made if this resolution had been in force at the date of the making of the order, decree, or judgment, rescind or modify the order, decree, or judgment in such manner as the court may deem proper for the purpose of giving effect to this resolution; and all remedies, at law or in equity, of the lessor based on any provision in any oral or written agreement of lease that the same shall be determined or forfeited if the premises shall be sold are hereby suspended while this resolution shall be in force, and every purchaser shall take the conveyance of any premises subject to the rights of all tenants in possession thereof under the provisions of this resolution. That the term 'real estate' as herein used shall be construed to include any and all land, any building, any part of any building, house, or dwelling, any apartment, room, suite of rooms and every other improvement or structure whatsoever on land situated and being in the District of Columbia."

Until a treaty is concluded between the United States and Germany, the act broadly prohibits any judicial proceeding to recover possession of any leased premises in the District of Columbia. In other words, during the life of the act, it purports to perpetuate existing leases at the rental in force at the date of the passage of the act. There are, however, three exceptions to the sweeping provisions of the act: (1) Where "the tenant has committed waste, or has been guilty on the premises of conduct which constitutes a nuisance or a breach of the peace, or other misdemeanor or crime"; (2) where "the premises are necessarily required by a landlord or bona fide purchaser for occupation

either by himself or his wife, children, or dependents while he is in the employ of or officially connected with any branch of the government"; and (3) "where the property has been sold to a bona fide purchaser for his own occupancy."

Under the second exception the usual remedy for procuring possession is open to a landlord or bona fide purchaser connected with the government, where the property is required for occupancy by himself, his family, or dependents. In this instance, the right of action is reserved only to a person employed by or connected with the government. The third exception relates broadly to purchasers of property for their own occupancy, whether the purchaser be a person, company or corporation. The exemption also applies, whether the purchaser be connected with the government or not. Doubt may be indulged as to whether this provision of the act relates to property sold before the passage of the act or before the inception of proceedings to recover possession. The latter construction, however, is in harmony with the debates in Congress when the act was passed, and is also in harmony with the object of the act. The act is dealing primarily with limitations upon the right of action to recover possession of property, and relates to the status of the property and the parties at that date.

We are not unmindful of the rule that courts, in statutory interpretation, must be guided by the terms of the act itself; but where, as in this instance, the congressional debates are in harmony with a fair construction of the act, they are highly persuasive in arriving at the legislative intention. This exception came into the act as an amendment in the Senate. The Senator proposing it made the following statement:

"It permits property to be sold to a person other than a government employé. It might be that an individual owning property in the District of Columbia would find it necessary to sell his property to protect some interest, or perhaps in a case where a mortgage was being called, and he could not find a purchaser who was a government employé, but could find one who was not. It seems to me it would be very unfair if he was prevented from selling it and giving possession to a man who was not a government employé."

Clearly the exception was intended to apply to future sales of property within the District, and was not confined to sales made prior to the passage of the act. The act is aimed at the regulation of leasing in the District of Columbia, in view of the crowded conditions existing and made necessary by the war, and further to prevent profiteering by speculating upon the necessities of those in the employ of the government. It placed no restrictions upon the sale of real estate, where conducted in good faith for the use and occupancy of the purchaser, and not for the purpose of evading the provisions of the act.

We think, therefore, that all bona fide purchasers of real estate in the District of Columbia for their own occupancy, both before and after the passage of the act, are excepted from its provisions; and, though the relation of landlord and tenant may be created technically where the purchaser acquires title to leased premises in the possession of a tenant, it should not be construed as preventing the purchaser from promptly bringing the usual proceeding to recover possession. To hold

otherwise would, in effect, foreclose a bona fide purchaser of leased premises from securing possession; for, immediately upon title passing to the purchaser, he, ipso facto, becomes a landlord until possession is procured. It is inconceivable that Congress would confer this exemption upon a purchaser, and, by the same act, deprive him of the means of enforcing it. If the purchaser, therefore, does nothing which would operate legally to establish a new relation of landlord and tenant, he is entitled to avail himself of the exemption afforded bona fide purchasers.

[10] Nor is the provision of the act, that "every purchaser shall take the conveyance of any premises subject to the rights of all tenants in possession thereof under the provisions of this resolution," any restriction upon the right of a purchaser to recover possession of property purchased for his own occupancy. It merely amounts to a declaration that any purchaser not coming within the exception to the act takes the premises subject to the rights of a tenant in possession under this resolution, and that even a bona fide purchaser takes the premises subject to an unexpired lease thereon, and cannot proceed to recover possession until the termination thereof, at which time the usual remedy provided by statute is open to him, regardless of the present act.

[11] It is unnecessary to pass upon the constitutionality of the act, since the present case is not within its provisions. The judgment is affirmed, with costs.

Affirmed.